NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DAIBES GAS HOLDINGS ATLANTA, L.L.C., REB OIL OF ALABAMA, LLC, FRED A. DAIBES, 1096-1100 RIVER ROAD ASSOCIATES, L.L.C., LYNDHURST RESIDENTIAL COMMUNITIES, LLC, and PORTSIDE GORGE ASSOCIATES, L.L.C.,<br><br>Defendants. | Civil Action No. 18-10869 (SRC)<br><br>OPINION |

**CHESLER**, District Judge

This matter comes before the Court on the motion filed by Defendants, Daibes Gas Holdings Atlanta, LLC ("DGHA"), Reb Oil of Alabama, LLC ("Reb Oil"), Fred A. Daibes ("Daibes"), 1096-1100 River Road Associates, LLC, ("River Road"), Lyndhurst Residential Communities, LLC, ("LRC"), and Portside Gorge Associates, LLC, ("PGA"), (collectively, "Defendants"), seeking an Order dismissing the Count Five of Plaintiff's Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6). Plaintiff Transamerica Life Insurance Company, LLC ("Transamerica" or "Plaintiff"), opposes this motion. The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons that follow, the motion to dismiss Count Five of Plaintiff's Complaint will be granted.

1

## I. FACTUAL BACKGROUND

### A. THE PARTIES AND THE UNDERLYING CONTRACTS

This breach of contract action arises out of two commercial notes and associated guarantees executed by Defendants and delivered to Transamerica. The following summary is based on the facts alleged in the Complaint, and the Court assumes the truth of the factual allegations solely for purposes of this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

In December 2007, DGHA and Reb Oil each executed a separate Secured Promissory Note (the "DGHA Note") and (the "Reb Oil Note") in favor of Transamerica, in a combined amount of $31 million. Compl. ¶¶ 12-13, Ex. A (DGHA Note); Ex. C (Reb Oil Note). Under the terms of the DGHA Note and the Reb Oil Note, payment is due at the first of each month. Id. ¶ 19. At or around the same time in December 2007, Daibes executed a Guarantee in favor of Transamerica in relation to the DGHA Note (the "DGHA Guarantee"), and a Guarantee in favor of Transamerica in relation to the Reb Oil Note (the "Reb Oil Guarantee"). Id. ¶ 14, Ex. F (the "DGHA Guarantee"); Ex. G (Reb Oil Guarantee).

Additionally, in or around sometime in 2006, LRC executed a Secured Promissory Note (the "LRC Note") in favor of Transamerica, in the amount of $26 million. Ex. H (Assumption) at 1. Subsequently, sometime in or around November 2011, the loan under the LRC Note was consolidated with another loan and assumed under a "First Assumption Agreement," into a single loan in the amount of approximately $69,639,115.73, which the parties refer to as the "Alexander Loan." Id. at 2. The Alexander Loan was secured by real property located in Bergen County, New Jersey. Id. The Alexander Loan is separate from the loans issued pursuant to the DGHA Note and the Reb Oil Note, respectively.

In September 2012, River Road and LRC assumed the DGHA Note as joint and several co-obligors with DGHA pursuant to an Assumption of Note and Other Loan Documents (the "Assumption"). Id. ¶ 15, Ex. H (Assumption). In the Assumption, Daibes and PGA agreed that the guarantee they previously executed in favor of Transamerica in connection with the Alexander Loan would be amended to include the DGHA Note and any obligations arising thereunder.[1] Id., Ex. H (Assumption) § 6. The Assumption also provided for the cross-default and cross-collateralization of the Alexander Loan and the loan evidenced by the DGHA Note, meaning that under the terms of the Assumption, a default under either note or their related loan documents would constitute a default under both, and the collateral for each would secure both loans. Id. §§ 7-8.

In November 2012, Defendants executed a Cross-Collateralization and Cross-Default Agreement (the "CCCD Agreement"), which, among other things, cross-collateralized the Alexander Loan, the loans evidenced by the DGHA and Reb Oil Notes, and other loans with real property located in Georgia, Alabama, Florida, and New Jersey. Compl. ¶ 18, Ex. I (CCCD Agreement). Section 3.2 of the CCCD Agreement provides, in relevant part, that a default under any notes or other loan documents shall be deemed a default under all of the loan documents. Compl., Ex. I (CCCD Agreement) § 3.2. Section 3.2 further provides that any such default under any loan document shall entitle "Lender to, at its option, declare all of the Cross-Collateralized Obligations to be immediately due and payable in full and to exercise any and all remedies available under any one or more of the Loan Documents or provided by applicable law." Id.

---

[1] However, according to the Complaint, in June 2014, Transamerica signed a Release of Guarantee Obligations that released PGA from the obligations PGA had assumed under the Assumption. Compl. ¶ 16.

### B. DEFENDANTS' ALLEGED BREACH OF CONTRACT

The Complaint avers that the DGHA and Reb Oil Notes are in default, as DGHA and Reb Oil each failed to make their respective scheduled monthly payments for March, April, May, and June 2018, and failed to pay their respective property taxes for 2011— which Transamerica then paid on their behalves to protect its liens. Compl. ¶¶ 20-37. On May 10, 2018, Transamerica made demand on both DGHA and Reb Oil, which both failed to respond with timely payment. Id. ¶¶ 25, 32. As a result, Transamerica then accelerated the indebtedness owed under both the DGHA Note and the Reb Oil Note. Id. ¶¶ 26, 33. On June 15, 2018, Transamerica sent demands on both the DGHA Guarantee and the Reb Oil Guarantee to Daibes as Guarantor for all amounts due under the DGHA and Reb Oil Notes. Id. ¶¶ 35-37. The Complaint avers that to date, Daibes has similarly failed to remit payment due and owing. Id.

Thereafter, on June 21, 2018, Transamerica filed a five-count Complaint, alleging four counts of breach of contract, against: DGHA (Count I), Daibes, as Guarantor of the DGHA and Reb Oil Notes (Counts II and IV), and Reb Oil (Count III), respectively, and one count seeking a declaratory judgment with respect to its rights under the CCCD (Count V). The Court has subject matter jurisdiction on grounds of diversity pursuant to 28 U.S.C. § 1332(a).

### II. DISCUSSION

Defendants move for dismissal of Count Five of Transamerica's Complaint. They argue that Count Five, which seeks a declaratory judgment, fails to present a justiciable "case or controversy," as required by Article III of the Constitution, and therefore must be dismissed pursuant to Rule 12(b)(1). Defendants also argue that Count Five of the Complaint fails to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). For the following reasons,

the Court finds that it lacks subject matter jurisdiction over Transamerica's claim for a declaratory judgment.

### A. RULE 12(B)(1) STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits the dismissal of a complaint for lack of subject matter jurisdiction at any point during the case. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Under Rule 12(b)(1), subject matter jurisdiction may be challenged on either the face of the pleadings or on the facts underlying the existence of jurisdiction. Id. A facial challenge asserts that a claim, on its face, is "insufficient to invoke the subject-matter jurisdiction of the court because, for example, it does not present a question of federal law," whereas a factual challenge maintains "that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). "In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack," as the court's review of the motion will differ depending on the kind of challenge. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (citing Mortensen, 549 F.2d at 891); see also Aichele, 757 F.3d at 357 (holding same).

A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction or that there is a legal bar to the court hearing the case, such as sovereign immunity. Bennett v. City of Atl. City, 288 F. Supp. 2d at 679-80. When reviewing a facial challenge under Rule 12(b)(1), the Court must accept all factual allegations in the complaint as true, and the Court may only consider the complaint and documents referenced in or attached to the complaint. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir.

2000). The application made by Defendants presents a facial challenge to the Complaint, and will be analyzed on that basis.

## B. DECLARATORY JUDGMENT CLAIM

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citation omitted). The party bringing a declaratory judgment action must prove that an actual controversy exists, by a preponderance of the evidence. See, e.g., Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 887 (Fed. Cir. 1992). An actual controversy exists where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127 (quoting Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). The Supreme Court has only "required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Id. (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)). An "adverse legal interest" requires a dispute as to a legal right, "for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring." Arris Grp., Inc. v. British Telecomms. PLC, 639 F.3d 1368, 1374 (Fed. Cir. 2011). This inquiry is necessarily

fact specific, and the Court must consider all of the relevant circumstances. See MedImmune, 549 U.S. at 127.

According to the Complaint, Transamerica seeks a declaratory judgment from this Court "indicating that Transamerica has not waived its rights to pursue any legal remedies against any of the foregoing parties **under New Jersey's 'Entire Controversy Doctrine' (as reflected in New Jersey Court Rule 4:30A and case law), Federal Rule of Civil Procedure 19, or case law by electing not to presently assert all the rights and remedies afforded to it,** including claims against RRA, LRC, and PGA, under the CCCD Agreement, the Assumption, and any other agreement at this time." Compl. ¶ 82 (emphasis added). The Complaint further avers that

> While Transamerica possesses the legal right under the CCCD Agreement and Assumption to call a default on other currently performing loans covered thereunder, **Transamerica presently desires to elect, subject to the granting by the Court of the above described declaratory judgment, not to exercise that right granted pursuant to Section 4.1 of the CCCD Agreement and under the Assumption, but to proceed solely with respect to the enforcing of the DGHA Note and the Reb Oil Note (and associated guarantees).** Transamerica presently asserts that calling a default on other loans covered under the CCCD Agreement and affected by the Assumption (i.e., the Alexander Loan), would be premature in light of the fact that the payments on the other notes are current and the accelerations of the DGHA Note and Reb Oil Note may result in the curing of the defaults at issue herein.

Compl. ¶ 83 (emphasis added). Section 4.1 of the CCCD Agreement, entitled "Election of Remedies," provides as follows:

> In the event of a Default, Lender need not resort first to its remedies under the Loan Documents executed by the Borrower that executed the Note or Loan Documents from which the Default arises. Lender may exercise its remedies for Default under any of the Loan Documents executed by any one or more of the Borrower Parties, at its sole and absolute discretion. All collateral securing the Cross-Collateralized Obligations may be applied to any of the Cross-Collateralized Obligations in such order as the Lender, in its sole discretion, shall determine.

Id. § 4.1.

7

In contrast to its Complaint, Transamerica's opposition brief says something entirely different. In its opposition, Transamerica contends the issue presented in the declaratory judgment count is strictly whether Section 4.1 of the CCCD Agreement permits Transamerica to declare only the non-performing loans identified in the Complaint to be immediately due and payable, and to proceed on these loans and associated guarantees—without fear of losing its remedies in the future—which it contends is an issue of contractual interpretation ripe for adjudication, and not an attempt to adjudicate a future legal defense. Pl. Opp'n at 7. Transamerica avers that despite its contractual right to declare all loans covered under the CCCD Agreement and Assumption to be immediately due and payable, it chose to institute this action only against the non-paying debtors on the notes that were delinquent and the associated guarantees.[2] Thus, Transamerica claims that it is pursuing this declaratory judgment claim as "Defendants have, unfortunately, used Plaintiff's good faith actions as a sword, claiming, in essence, that Plaintiff should have to declare all performing loans subject to the cross-default provisions of the CCCD Agreement and Assumption to be due and payable now, or potentially be barred from recovery in the future, even if one of the non-joined performing loans becomes delinquent under its payment terms or other material default, or there is an unsatisfied judgment in this action." Id. at 6-7. Transamerica further contends that its attempt "to limit the scope of the dispute by proceeding only under non-performing loans should be praised, not punished." Id. at 7. Finally, Transamerica argues, in the alternative, that should the Court dismiss Count Five of the Complaint, it should be granted leave to amend the Complaint to include the currently-performing Alexander Loan by virtue of its cross-default under the CCCD Agreement and

---

[2] It further states it has "no desire to declare the notes that are performing with respect to monthly payments [i.e. the Alexander Loan] to be due and payable in full based solely on a cross-default." Pl. Opp'n at 6.

Assumption, and all necessary parties, so that it does not lose the right to proceed against this loan. Id. at 8-9.

To the extent that Transamerica seeks declaratory relief, the Court notes that the burden here rests on Transamerica, the party requesting declaratory judgment, "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [claim] was filed." Sierra Applies Scis., Inc. v. Advanced Energy Indus., 363 F.3d 1361, 1373 (Fed. Cir. 2004) (citing Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enters. Holdings, Inc., 787 F.2d 572, 575 (Fed. Cir. 1986)). Importantly, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995). In essence, the Court must determine whether issuing a declaratory judgment will move forward a concrete, fully developed dispute.

Transamerica has not met its burden to show that this is the case here. Transamerica phrases its requested declaratory relief as seeking the Court to construe of Section 4.1 of the CCCD Contract. ("Plaintiff seeks adjudication as to its affirmative rights and obligations related to the parties involved in this case and the agreements that are specifically at issue herein. Stated another way, Plaintiff seeks a ruling as to the meaning and validity of a contract provision, not a preemptive ruling as to Defendants' potential affirmative defense in a subsequent proceeding.") Pl. Opp'n at 12. However, Defendants correctly note that any declaratory relief the Court grants on this issue would in fact constitute an advisory opinion for a dispute not currently before this Court. By the very terms of the Complaint, Transamerica instead seeks a judicial declaration advising it as to the future consequences of its inaction. Specifically, Transamerica seeks a ruling on the question of whether by declining to pursue an action on the Alexander Loan, it will be

subject to an affirmative defense that Defendants might assert in the future, based upon New Jersey's Entire Controversy Doctrine and/or Federal Rule of Civil Procedure 19. Thus, Transamerica asks the Court to determine the impact of its action or inaction in this lawsuit with regard to a potential future lawsuit, and a potential affirmative defense, to determine if Transamerica will have waived its right to pursue a claim concerning the Alexander Loan in a future suit, should default occur. Transamerica essentially asks the Court to rule on the viability of a hypothetical claim which may never be brought, and an affirmative defense that may never be asserted. This ruling would constitute an advisory opinion. Based on the Complaint itself, Transamerica asks the Court to rule in advance, before having a truly concrete issue or immediacy of a dispute, as to whether bringing this action for default on the Reb Oil and DGHA Notes would foreclose a claim in the future should a default subsequently occur under the Alexander Loan. Federal courts may not render advisory opinions. Herb v. Pitcairn, 324 U.S. 117, 126 (1945) ("We are not permitted to render an advisory opinion."); see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 213 (2000) (citation omitted).

Count Five of this Complaint and the facts alleged in support of this declaratory judgment claim fail to present a concrete dispute for the Court to decide. The Court's interpretation of Section 4.1 of the CCCD Agreement and its declaration of Transamerica's rights would fail to address Transamerica's stated concern of whether the operation of the Entire Controversy Doctrine would bar Transamerica from subsequently litigating a claim based on the Alexander Loan if it does not pursue it in the instant matter. Moreover, at this time, there is nothing in the record to indicate, and Transamerica has not pleaded, that Defendants have preemptively invoked the Entire Controversy Doctrine as a defense or intend to pursue such defense. Accordingly, based on these facts, Transamerica has not shown that an actual controversy exists

with respect to its Declaratory Judgment action, and the Court therefore lacks the authority to grant the declaratory form of relief Transamerica has requested under Count Five in this action. Accordingly, Count Five of the Complaint must be dismissed for lack of subject matter jurisdiction.

### C. AMENDMENT OF THE COMPLAINT

Plaintiff, in its opposition, requests that in the event the Court finds that Count Five should be dismissed, it be permitted to amend the Complaint. Defendant contends Transamerica's request is premature and unripe for decision, as no motion for leave to amend has been filed, and Transamerica has not submitted the proposed amended Complaint as required by Federal Rule of Civil Procedure 15 and Local Rule 7.1(f).

The Court agrees with Defendants that Transamerica's request is technically premature, since review of the docket indicates a motion to amend has not been filed, and a proposed amended Complaint has not been submitted. However, the Court does note that pursuant to Federal Rule of Civil Procedure 15, motions for leave to amend should be freely granted. It would appear that, in light of the Court's decision, any application to amend the Complaint to include loans which, by virtue of the cross-collateralization provisions, are now in default, should be readily consented to by Defendants.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss Count Five of the Complaint. An appropriate Order will be filed.

                                                       s/ Stanley R. Chesler
                                                      STANLEY R. CHESLER
                                                 United States District Judge

Dated: October 17, 2018