UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>DAIBES GAS HOLDINGS ATLANTA, L.L.C., *et al.*,<br><br>*Defendants*. | Civil Action No. 18-cv-10869(SRC)(CLW)<br><br>**REPORT & RECOMMENDATION** |

**I.   PRELIMINARY STATEMENT**

Following a successful motion for summary judgment as to liability and contract-based damages on all eight of its claims, Plaintiff filed a Motion for an Award of Legal Fees, Costs and Expenses ("Fee Motion") [DE 84], which was supplemented on October 19, 2021 ("Supplement") [DE 98], and a separate Motion for an Award of Costs pursuant to Federal Rule of Civil Procedure 54 ("Rule 54 Motion for Costs") [DE 85].  By Order dated September 22, 2021, District Judge Chesler appointed me Special Master to "provide the Court with proposed findings of fact and recommendations for decision on Plaintiff's pending motions for attorney's fees and costs, including the supplemental application for fees and costs subsequent to April 30, 2021." [DE 95].

After carefully reviewing the parties' numerous submissions, the last of which was filed on December 7, 2021, I respectfully recommend to Judge Chesler that Plaintiff's Rule 54 Motion for Costs be GRANTED, and Plaintiff's Fee Motion be GRANTED IN PART AND DENIED IN PART.

1

## II.  DISCUSSION

Per its two motions, Plaintiff seeks the following relief:  (1) $16,483.86 in costs pursuant to its Rule 54 Motion for Costs; (2) $1,230,449.25 in legal fees and $336,306.23 in costs/expenses pursuant to its Fee Motion; and (3) an additional $162,449.50 in legal fees and $2,801.30 in expenses that were incurred after April 30, 2021.  I will address each in turn.

### a.  Rule 54 Motion for Costs

Defendants did not file any opposition to Plaintiff's Rule 54 Motion for Costs, which shows on the Bill of Costs a total sought amount of $16,483.86.  [*See* DE 85-1].  As such, I recommend that the motion be granted, and costs in the amount of $16,483.86 be awarded to Plaintiff.

I note, however, that with the exception of the $400 filing fee, all of the costs in the Rule 54 Motion for Costs also appear in Plaintiff's Fee Motion, with identical supporting documents. (*Compare* May 20, 2021, Hartmann Bill of Costs Decl. [DE 85-2] Exs. B-E *with* May 20, 2021, Hartmann Decl. [DE 84-4] Ex. B).  To avoid a double recovery, I also recommend that the total cost award related to Plaintiff's Fee Motion be reduced by $16,083.86.

### b.  Fee Motion & Supplement

Defendants oppose Plaintiff's Fee Motion and Supplement, which seeks $1,230,449.25 in attorney's fees and $336,306.23 in expenses and costs through April 30, 2021, and another $162,449.50 in attorney's fees and $2,801.30 in expenses from May 1, 2021, through September 24, 2021.  Defendants contend that portions of Plaintiff's requested legal fees should be excluded or trimmed considerably because such fees are unreasonable, and certain travel-related expenses and attorney time are not recoverable. (Defs.' Opp. at 2-7; Defs.' Suppl. Opp. at 1-4).  Defendants also contend that Plaintiff's legal fee award is capped as a matter of law.

2

### i. Reasonableness of Attorney's Fees in Fee Motion

Under the law, a "prevailing party" can recover attorney's fees if provided for "by statute, court rule, or contract."[1] *See, e.g.*, *Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 386-87 (2009); *Apple Corps. Ltd. v. Int'l Collectors Soc'y*, 25 F. Supp. 2d 480, 484 (D.N.J. 1998). However, "[a] prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005).

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must submit evidence supporting the hours worked and the rates claimed." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (internal quotation marks and citation omitted). "If it wishes to challenge the fee award, the opposing party must then object 'with sufficient specificity' to the request." *Interfaith Cmty.*, 426 F.3d at n.5 (quoting *Rode*, 892 F.2d at 1183). While "[t]he district court cannot decrease a fee award based on factors not raised at all by the adverse party," *Rode*, 892 F.2d at 1183, the ultimate burden to show the reasonableness of the requested attorney's fees remains with the movant for the portions that are subject to the opponents' objections. *See Interfaith Cmty.*, 426 F.3d at 711 ("[O]nce the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request."). District courts have "a great deal of discretion to adjust the fee award in light of those objections," *Rode*, 892 F.2d at 1183 (internal quotation marks and citations omitted), including reducing hours "that are excessive, redundant, or otherwise unnecessary." *Interfaith Cmty.*, 426 F.3d at 711 (internal quotation marks and citation omitted); *see also Bell v.*

---

[1] Despite the Court having subject matter jurisdiction pursuant to diversity, neither party presented a choice of law analysis nor otherwise addressed whether and to what extent state or federal law applies to the pending motions. I note that both parties cite to and rely on both federal and state law throughout their briefs and no conflict between the laws became apparent in addressing the pending motions.

*United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989) ("[I]n setting the amount of any reduction, the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires. In order to exercise its discretion fairly, a district court needs flexibility in deciding whether to reduce a fee request and, if so, by how much.").

As a starting point, I note the following is not contested: (1) Plaintiff is a prevailing party; (2) the loan documents at issue in this matter provide Plaintiff with a legal basis to recover reasonable legal fees, costs, and expenses; and (3) the hourly rates claimed by Plaintiff are reasonable (with the exception of those instances where Defendants claim the lead partner billed for tasks that a partner should not have handled). Instead, Defendants "object to the reasonableness of certain time entries" and claim that attorney time was inflated by "excessive billing and considerable duplication of efforts" at Plaintiff's lead firm, and "redundancies between Plaintiff's lead lawyers and its local counsel." (Defs.' Opp. at 2-3).

### 1. Excessive Billing Objections

Defendants make <u>seven</u> specific excessive billing objections to Plaintiff's Fee Motion (*i.e.*, before supplementation), which encompasses assertions of duplicated efforts and failures to delegate tasks to more junior attorneys. I find that Defendants have met their burden of lodging sufficiently specific objections. *See Bell*, 884 F.2d at 720 ("First, [the adverse party] must generally identify the type of work being challenged, and second, they must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable."). Plaintiff must therefore justify the reasonableness of the hours spent. *See Interfaith Cmty.*, 426 F.3d at 713.

First, Defendants take issue with the total hours billed (508.2) and the split of those hours between two attorneys – one associate (275.4) and one partner (232.8) – to draft summary judgment papers, which was apparently exclusive of time allocated separately to conducting legal research for those briefs.  (Defs.' Opp. at 3; July 16, 2021, Lustberg Decl. [DE 92-1] Ex. 1).  Plaintiff counters that the 508.2 hour figure is an aggregate of time spent on making its motion for summary judgment (367.5 hours) and opposing Defendants' motion for summary judgment (140.7 hours), and the hours spent were reasonable for various reasons including "the complicated nature of the numerous arguments addressed," "voluminous supporting documentation," and that Defendants' own conduct "necessitated much of the time spent on the motions, as they continued to challenge legal issues on liability that had been resolved in the Foreclosure Action."  (Pl. Reply at 3).  I find that Plaintiff has not demonstrated the reasonableness for all the hours billed.

While appreciating the complexities surrounding the case generally and this motion in particular, including the application of collateral estoppel as well as the enforceability of the prepayment premium and default interest rate provisions under the laws of three states, spending over 500 hours drafting summary judgment papers (exclusive of research) appears excessive, and none of the explanations from Plaintiff provide a sound justification for spending that many hours.  The billing records and narratives also do not provide any clarity on the issue of why over 500 hours would be reasonable for preparing summary judgment papers (*See, e.g.*, May 20, 2021, Hartmann Decl. [DE 84-4] Ex. A at 81 (Nov 20, 2020:  "Work on drafting motion for summary judgment"); *Id.* (Nov 25, 2020:  "Drafting of statement of undisputed material facts in support of motion to dismiss"); *Id.* at 84 (Dec 11, 2020:  "Work on summary judgment brief, statement of undisputed material facts, and certifications"); *Id.* at 88 (Jan 14, 2021:  "Continue working on brief in opposition to defendants' motion for summary judgment including call with client")).

5

It is apparent from Plaintiff's own Reply Brief and Judge Chesler's April 20, 2021, Opinion, that the liability issues Defendants continued to pursue in this action were already addressed in the foreclosure action, which meant that this was not the first time Plaintiff encountered these arguments. Further calling into question the over 500 hours spent by two attorneys at Plaintiff's lead firm, is that local counsel had more than a cursory role in the summary judgment process, billing 69.2 hours. Local counsel apparently drafted substantive portions of the briefs, as the motion dealt with some of the same liability issues in the related foreclosure action in which local counsel served as lead counsel. (*See* Pl.'s Reply at 9). And although the parties made cross-motions for summary judgment, Plaintiff had to draft only one additional brief, all of which were within the standard page limits under Local Rule 7.1 (*i.e.*, 40 pages, except 15 for the reply). [*See* DE 63, 65, 67]. Based on my review of the record, the submitted papers, counsel's corresponding time entries, my general experience as to how much time litigation tasks require, as well as the discretion and flexibility afforded under the law (*see, e.g.*, *Rode*, 892 F.2d at 1183; *Interfaith Cmty.*, 426 F.3d at 711; *Bell*, 884 F.2d at 721), I recommend that the 508.2 hours billed be reduced to 400 hours.

In addition, having a partner bill within approximately 20 hours of the associate at each stage of summary judgment briefing appears excessive (*i.e.*, 138 hours for associate and 117.4 hours for partner regarding moving brief; 79.8 hours for associate and 60.9 hours for partner regarding opposition brief; and 57.6 hours for associate and 54.5 hours for partner regarding reply brief). Gathering "voluminous supporting documentation" and other aspects of putting together a summary judgment record are tasks generally delegated to associates (or even non-attorneys). And the associate assigned to this matter was not a junior associate; he had six years of experience at the time of the motion, including a federal clerkship. (*See* Pl.'s Brief at 9). As such, based on the

6

tasks involved, my review of the motions, and my experience, I find that a more reasonable time split between partner and associate to prepare the summary judgment papers would be in the range of 1/3 of the billable time by the partner and 2/3 of the billable time by the associate. I therefore recommend that 270 of the reduced 400 hours billed be compensated at the associate hourly rate of $345 and the remaining 130 hours billed be compensated at the partner hourly rate of $500.[2] The result of these recommendations would be a reduction of $63,580 to the attorney's fee award.[3]

Second, Defendants object to the 84.5 hours the same partner and associate billed in connection with Plaintiff's expert report during a three-week span in May 2020, particularly when compared to the total amount of time (282.75 hours) spent by the expert during his more than year-long engagement in the matter. (See Defs.' Opp. at 4). The associate billed 53.1 hours and the partner billed 31.4 hours. (See July 16, 2021, Lustberg Decl. [DE 92-1] Ex. 2). Plaintiff responded that the partner "performing the work had a close relationship with the client spanning many years, giving him the background to perform the work much more efficiently than an associate. Furthermore, given that the rates for Chicago attorneys are significantly lower than New Jersey rates, using Chicago counsel resulted in significant savings." (Pl.'s Reply at 5). I do not see how any of this is relevant to the specific objection, namely Plaintiff's counsel spending 84.5 hours over a three-week period right before the expert report was served. I recognize that counsel will spend time reviewing a report provided by their expert, but Plaintiff provides no explanation, and

---

[2] The summary judgment briefing began in November 2020 and ended on February 1, 2021. At the beginning of 2021, the associate's hourly rate increased from $345 to $385 and the partner's hourly rate increased from $500 to $550. (See Pl.'s Brief at 9).

[3] I calculated the original total dollar amount for the 275.4 hours billed by the associate (based on his $345 2020 hourly rate and $385 2021 hourly rate) to be $100,165, and the total dollar amount for the 232.8 hours billed by the partner (based on his $500 2020 hourly rate and $550 2021 hourly rate) to be $121,565 – for a total of $221,730. The reduced 270 associate hours at an hourly rate of $345 equals $93,150, and the reduced 130 partner hours at an hourly rate of $500 equals $65,000 – for a total of $158,150.

the billing records and narratives do not provide any answers, as to why so many hours were needed in this three-week window of time (*i.e.*, the equivalent of two full-time 40+ hour work weeks). (*See, e.g.*, May 20, 2021, Hartmann Decl. [DE 84-4] Ex. A at 71 (Jun 18, 2020: "Analysis of and gathering of materials for expert's report"); *Id*. (June 25, 2020: "Review and prepare notes regarding expert report and back-up documentation"); *Id.* at 72 (June 26, 2020: "[G]ather support for expert report and prepare notes regarding report citations"). Based on my review of the record, the submitted papers, counsel's corresponding time entries, my general experience as to how much time litigation tasks require, as well as the discretion and flexibility afforded under the law (*see, e.g.*, *Rode*, 892 F.2d at 1183; *Interfaith Cmty.*, 426 F.3d at 711; *Bell*, 884 F.2d at 721), I recommend that these hours be reduced by 50%. This results in a reduction of $17,009.75 to the attorney's fee award.[4]

Third, Defendants object to 40.2 hours the lead partner billed in a two-week period from April 19, 2019, to May 6, 2019, regarding a legal research memo, particularly in light of the fact that a junior partner previously spent 34 hours researching and drafting a memo addressing the very same enforceability issues. (Defs.' Opp. at 4; July 16, 2021, Lustberg Decl. [DE 92-1] Ex 3). In response, Plaintiff offers several reasons for the reasonableness of the hours spent: (1) "the memo addressed the validity of prepayment premium and default interest provisions across multiple jurisdictions, which were ***the*** central and most hotly contested issues in this case, accounting for damages of over $35 million;" (2) "[t]he research was conducted and memo drafted by a junior partner already familiar with the area of law, whose time was billed at an associate rate of $335/hour;" (3) "[t]he research was undertaken early in the case in a concentrated period to

---

[4] I calculated the original total dollar amount for the 53.1 hours billed by the associate (based on his $345 2020 hourly rate) to be $18,319.50 and the total dollar amount for the 31.4 hours billed by the partner (based on his $500 2020 hourly rate) to be $15,700 – for a total of $34,019.50.

advise the client and prepare for prosecuting the claims related to the prepayment premiums;" and (4) "the senior partner's work took place after the junior attorney's research and drafting, and consisted of reviewing the case law and updating and revising the memo." (Pl.'s Reply at 5).

Although sensible that a senior partner would spend time reviewing and possibly editing a memo that addressed the central issues in dispute, Plaintiff does not provide an adequate explanation for why the lead partner's time would eclipse that of the memo's preparer, particularly when the preparer, by Plaintiff's own admission, was already familiar with the issues. (*See* Pl.'s Brief at 9 (the memo drafter "was selected to do that research because of her prior experience on similar cases.")). If, after a review of the memo, the senior partner believed it needed significant revising or updating, that task could have (and should have) been performed by the junior partner who had the requisite familiarity. I see nothing in the billing records and narratives that show otherwise. (*See* May 20, 2021, Hartmann Decl. [DE 84-4] Ex. A at 20-24). Based on my review of the record, the submitted papers, counsel's corresponding time entries, my general experience as to how much time litigation tasks require, as well as the discretion and flexibility afforded under the law (*see, e.g.*, *Rode*, 892 F.2d at 1183; *Interfaith Cmty.*, 426 F.3d at 711; *Bell*, 884 F.2d at 721), I recommend that the 40.2 hours billed by the lead partner be reduced to 20 hours. This results in a reduction of $10,100 to the attorney's fee award.[5]

Defendant's last four objections are all based on 105.5 hours spent by the lead partner on tasks that "could, and should, have been done by a more junior lawyer on the team." (Defs.' Opp. at 4; July 16, 2021, Lustberg Decl. [DE 92-1] Ex. 4). Specifically, Defendants take issue with the following: (1) 16.8 hours drafting an Answer and affirmative defenses to the Counterclaim; (2) 36.2 hours drafting written discovery requests; (3) 30.3 hours reviewing documents for

---

[5] I calculated the original total dollar amount for the 40.2 hours billed by the partner (based on his $500 2019 hourly rate) to be $20,100.

9

production to Defendants; and (4) 22.2 hours gathering materials for Plaintiff's expert witness. Plaintiff responds: (1) "[a]t any one time Plaintiff had two attorneys working on this case, a partner and an associate;" (2) it is "reasonable and customary that the partner would review and supplement the work performed by the junior attorney;" and (3) "Plaintiff's senior partner conducted all of the depositions, which is the most efficient way to handle them. And it was reasonable and necessary for the partner to prepare for the depositions by reviewing the discovery." (Pl.'s Reply at 6).

While a partner may rightly spend time working on all of these tasks, (*e.g.*, drafting a pleading, taking part in discovery, and working with an expert), most appropriately in a supervisory capacity, Plaintiff here does not adequately justify the amount of partner time spent on these tasks. *See Ursic v. Bethlehem Mines*, 719 F.2d 670, 676 (3d Cir. 1983) ("Nor do we approve wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates."). At best, Plaintiff offers a specific justification for the 30.3 hours of reviewing documents by the lead partner, that being for deposition preparation. But this explanation is contradicted by the attorney's own billing narratives, which state that the document review in question was in connection with document productions, not deposition preparation.[6] (*See, e.g.*, May 20, 2021 Hartmann Decl. [DE 84-4] Ex. A at 37 (Aug 19, 2019: "Review client documents to evaluate for production and determine if privileged"); *Id.* at 40 (Sep 16, 2019: "Review documents for second production in the federal case including privilege review"); *Id.* at 44 (Oct 10, 2019: "Work on document review and preparation of documents for

---

[6] Certain other billing records contain narratives specific to deposition preparation. (*See, e.g.*, May 20, 2021, Hartmann Decl., [DE 84-4] Ex. A at 50 (Nov 19, 2019: "Prepare for deposition, including working on outline and review of exhibits); *Id.* at 53 (Dec 9, 2019: "Work on preparation for upcoming depositions")).

10

production"); *Id.* at 48 (Nov 8, 2019: "Review documents and prepare email collection for production"); *Id.* at 53 (Dec 9, 2019: "[R]eview documents for supplemental production")).

Based on my review of the record, the submitted papers, counsel's corresponding time entries, my general experience as to how much time litigation tasks require, as well as the discretion and flexibility afforded under the law (*see, e.g.*, *Rode*, 892 F.2d at 1183; *Interfaith Cmty.*, 426 F.3d at 711; *Bell*, 884 F.2d at 721), I recommend that of the 105.5 hours billed by the lead partner, 40 hours be compensated at the partner hourly rate of $500 and 65.5 be compensated at the associate hourly rate of $325. This results in a reduction of $11,462.50 to the attorney's fee award.[7]

### 2. Objections Related to Alleged Redundancy Between Lead and Local Counsel

Defendants also object to alleged redundancies regarding time spent by lead and local counsel. In particular, Defendants object to the following time billed by local counsel: (1) 69.2 hours in the preparation of summary judgment papers (on top of the 508 hours that Plaintiff's lead counsel billed to draft them); (2) 15.5 hours in connection with drafting discovery requests and responses between February and April 2019 (on top of the 36.2 hours that Plaintiff's lead partner billed to prepare the same written discovery); and (3) 11.1 hours reviewing transcripts of depositions and expert reports despite no local counsel attending any of the depositions or appearing to have any role in preparing or contributing to the depositions or expert reports.[8] (Defs.' Opp. at 6).

---

[7] I calculated the original total dollar amount for the 105.5 hours billed by the partner (based on his $500 hourly rate) to be $52,750. 40 hours at an hourly rate of $500 equals $20,000. 65.5 hours at the associate hourly rate of $325 equals $21,287.50.

[8] Defendants also challenge 1.2 hours local counsel spent on April 6, 2020, researching "prepayment premiums under NJ law." I find New Jersey local counsel spending just over an hour researching law within its jurisdiction entirely reasonable.

In justifying local counsel's hours regarding summary judgment preparation, Plaintiff counters that "Cole Schotz reviewed and proposed revisions to papers drafted by lead counsel to ensure that moving, opposition, and reply papers complied with local practice and substantively addressed all of the issues" and because Defendants interjected defenses "that were previously resolved in the Foreclosure Action (in which Cole Schotz was lead counsel [which] necessitated Cole Schotz's involvement in the drafting of substantive portions of the briefs, the drafting of a declaration discussing the Foreclosure Action, and legal research on issues related to the Foreclosure Action and/or local practice (*e.g.*, attorneys' fees, Judge Chesler's prior opinions, and collateral estoppel)." (Pl.'s Reply at 9). This explanation and review of the entries satisfy me that the hours billed were reasonable and not duplicative. *See Rode*, 892 F.2d at 1187 ("A reduction for duplication is warranted only if the attorneys are *unreasonably* doing the *same* work." (internal quotation marks and citation omitted) (emphasis in original)).

I also agree with Plaintiff that local counsel's role "is to provide insight and revisions to documents, including discovery, on local practice and procedure that otherwise would not be known to lead counsel" (Pl.'s Reply at 9), and spending 15.5 hours working on discovery requests/responses to satisfy that role appears reasonable based on my review of the record and time entries. Finally, the 11.1 hours local counsel spent conducting a limited review of certain deposition transcripts and expert reports for purposes of "remain[ing] basically knowledgeable about the facts and legal theories at issue" (Pl.'s Reply at 9) was reasonable in light of local counsel's ethical and professional responsibilities. *See, e.g.*, *Ingemi v. Pelino & Lentz*, 866 F. Supp. 156, 162 (D.N.J. 1994) ("District court local rules . . . require local counsel to take more than a de minimis role in the representation" and help "ensure that attorneys representing New

Jersey clients in New Jersey courts are sufficiently familiar with state law and practice to represent their clients knowledgeably and effectively.").

### ii. Reasonableness of Attorney's Fees in Supplement

In Plaintiff's Supplement to its Fee Motion, it seeks an additional $165,250.80 ($162,449.50 in attorney's fees and $2,801.30 in expenses) incurred from May 1, 2021, through September 24, 2021, which included, among other things, finalizing and filing the Fee Motion and Bill of Costs, evaluating Defendants' objections and preparing Plaintiff's reply and Supplement, and preparing and filing a joint motion to amend/alter the Court's Summary Judgment Opinion and Order. (Pl.'s Suppl. at 1-3). Defendants object to Plaintiff's lawyers billing 350 more hours in a five-month period to a case that, with the exception of the attorney fee issue, has been disposed of. (Defs.' Suppl. Opp. at 2). Specifically, Defendants take issue with 152 hours spent on the Fee Motion and Supplement, for which lead counsel billed 73.8 hours (60% of which by the lead partner) and local counsel billed 78.2 hours. Despite Plaintiff's argument to the contrary, Defendants have met their burden in objecting with sufficient specificity to give Plaintiff notice as to what is being challenged; in this instance, all the identified time entries relating to the 152 hours. (*See* Nov. 22, 2021, Lustberg Decl. [DE 99-1] Exs. 1-2).

Spending 152 hours on a fee application, even one that was supplemented, appears excessive based on my review of the record. That "[a]ll of this attorney time was documented by detailed contemporaneous time entries" (Pl.'s Suppl. Reply at 4) does not mean that all of the time the attorneys spent was reasonable. While I appreciate that a motion dealing with New Jersey and Third Circuit law would lend itself to more involvement by local counsel, Plaintiff does not explain, then, why lead counsel spent nearly the same amount of time on the Fee Motion or why 152 total hours was justified. The initial 23-page brief in support of Plaintiff's Fee Motion (and

supporting materials), which accounted for nearly 95 of the 152 hours, was straightforward and significantly overlapped with the primary supporting declarations. (*Compare* Pl.'s Brief [DE 84-1] *with* May 20, 2021, Klein Decl. [DE 84-2] *and* May 20, 2021, Hartmann Decl. [DE 84-4]). Plaintiff's argument that because "lead counsel was the billing attorney and thus most knowledgeable of the work performed, it was more, not less, efficient overall for him to draft the initial fee motion and time summary" (Pl.'s Suppl. Reply at 5), is unpersuasive.[9]  Moreover, Plaintiff appears to justify some of the attorney time billed for purposes of preparing "time summaries" and "supporting expense documents." (*See* Pl.'s Suppl. Reply at 4).  While gathering the supporting documents was no doubt a laborious endeavor, it certainly did not necessitate attorney time.  Based on my review of the record, the submitted papers, counsel's corresponding time entries, my general experience as to how much time litigation tasks require, as well as the discretion and flexibility afforded under the law (*see, e.g.*, *Rode*, 892 F.2d at 1183; *Interfaith Cmty.*, 426 F.3d at 711; *Bell*, 884 F.2d at 721), I recommend that 20 hours of local counsel associate time be deducted, 20 hours of lead counsel partner time be deducted, and 10 hours of lead counsel associate time be deducted.  The result of these recommendations would be a reduction of $20,750 to the attorney's fee award.[10]

Defendants also lodge objections to five other entries:  (1) 0.6 hours billed on May 17, 2021, by a litigation technician for creating a report of what is in the review database; (2) 1.4 hours billed on May 19, 2021, by an associate to make redactions to the fee petition; (3) 0.5 hours billed

---

[9] And if this was the case, then it would appear to contradict local counsel spending nearly 57 hours on the same initial fee motion.

[10] A 20-hour reduction of local counsel associate time at her 2021 hourly rate of $295 equals $5,900; a 20-hour reduction of lead counsel partner time at his 2021 hourly rate of $550 equals $11,000; and a 10-hour reduction of lead counsel associate time at his hourly rate of $385 equals $3,850.

on July 16 and 26, 2021, by a partner based on discrepancies in his time sheets between the daily total and the total attributed to each task in the billing summary narratives; (4) 8.1 hours billed between August 24 and August 30, 2021, by an associate to conduct legal research; and (5) 6.2 hours billed between July 26 and July 29, 2021, by a summer associate to conduct legal research (5 hours) and an associate to review that research (1.2 hours). In response, Plaintiff agreed to withdraw its request for 0.6 hours by the litigation technician (a reduction of $135) and 0.5 hours by the partner due to discrepancies in his time sheets (a reduction of $275). Based on these withdrawn items, I recommend a reduction of $410 to the attorney's fee award. For the other challenged hours, however, Plaintiff provides satisfactory explanations for the limited hours billed. Redacting information (even if the ultimate Fee Motion was not redacted), conducting additional research in response to a threat of an appeal, and researching issues germane to the Fee Motion are all reasonable and not excessive.

### c. Travel Time & Expenses

As for the expenses Plaintiff seeks in its Fee Motion, Defendants raise objections to certain travel-related expenses (and related attorney time). First, Defendants object to both the time and expense that Chicago-based lead counsel charged for round-trip travel to New Jersey on four separate occasions to attend a September 23, 2019, Court hearing and three depositions. (Defs.' Opp. at 6). The travel expenses were $4,940 and the billed travel time was $10,750 (*i.e.*, 21.5 hours at an hourly rate of $500). In response, Plaintiff claims that Defendants are incorrect about a "blanket prohibition" against awarding travel time for out-of-state counsel, and that the law generally compensates attorney travel time, which in this case was "unquestionably necessary and reasonable." (Pl.'s Reply at 8-9).

The law supports Defendants' position that unless forum counsel is unwilling to represent the plaintiff, then compensation will not be allowed for out-of-state travel time or travel costs.[11] *See, e.g.*, *Interfaith Cmty.*, 426 F.3d at 710; *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 312 (3d Cir. 2008). In this case, no evidence suggests that New Jersey counsel was unwilling to represent Plaintiff. To the contrary, local counsel represented Plaintiff in the related forfeiture matter and "held the lead role in this action" for a period of time. (*See* Pl.'s Brief at 4). Because local counsel was willing to serve (and actually served) as lead counsel in this matter, I recommend that $4,940 be reduced from the cost award and $10,750 be reduced from the attorney's fee award.

Second, Defendants object to Plaintiff seeking reimbursement for a total of $266.89 in travel expenses (*i.e.*, hotel, dinner, and an Uber ride) that two of Plaintiff's former employees incurred for their deposition prep sessions because those expenses are not the type of witness fees and allowances contemplated by 28 U.S.C. § 1821, were not included in Plaintiff's Bill of Costs, and, instead, were improperly added to the attorney fee application. (Defs.' Opp. at 7). Quoting *Council Enterprises, Inc. v. City of Atl. City*, 200 N.J. Super. 431, 443 (Law Div. 1985), Plaintiff responds that "[a]ttorney's fees may also be recovered for such items as meals, [and] lodging . . . and other out of pocket expenses that are the type that an attorney would normally bill a fee paying client." I agree with Plaintiff that reasonable travel-related costs/expenses for two witnesses are the type of out of pocket expenses that an attorney would normally bill a fee paying client and, since reimbursement was pursuant to contract, I see no basis to limit what is recoverable pursuant to statute.

---

[11] Plaintiff argues that the law relied on by Defendants applies only under federal law and that "Plaintiff's research has not uncovered any New Jersey case applying the federal rule cited by Defendant." (Pl.'s Reply at 8). One view of this argument is that the law does not apply to a fee motion pursuant to contract, but at least one federal court applied the law Plaintiff challenges to a beach-of-contract case that would have been similarly situated jurisdictionally. *See TRC Envtl. Corp. v. Waterside Dev. Corp.*, 2018 WL 3999571, at *1-2 (D.N.J. Aug. 21, 2018). This could also be viewed as a choice-of-law argument, but Plaintiff has not presented any analysis or actual conflict between state and federal law.

### d. **New Jersey Rule of Court 4:42-9(a)(4)**

Defendants also argue that Plaintiff's legal fee award is capped as a matter law under a subsection of Rule 4:42-9(a), which allows (but limits) attorney's fees in an action for the foreclosure of a mortgage as follows:

> [O]n all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3.5%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1.5%; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitations of this rule.

R. 4:42-9(a)(4). I do not find that the Rule applies and, even if it did, Plaintiff's requested amount of attorney's fees falls within the applicable limit.

This action was for damages related to a breach of contract, not a foreclosure action. *See Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll*, 44 N.J. 442, 448 (1965) ("[T]he enforcement of a contractual provision for the payment of necessary expenses incurred in [a] legal action, including a reasonable attorney's fee, constitutes an adjudication of an element of damages for the breach and not an allowance of counsel fees"). As Defendants point out, New Jersey Courts have expanded the rule to apply in non-foreclosure actions under limited circumstances. The Supreme Court of New Jersey addressed the applicability of Rule 4:55-7(c) (the predecessor to Rule 4:42-9), to an action seeking judgment on a promissory note (*i.e.*, a non-foreclosure action). *See Bergen Builders Inc. v. Horizon Developers, Inc.*, 44 N.J. 435, 438 (1965). While the Supreme Court of New Jersey acknowledged that the "rule is by its terms confined to foreclosures and is not applicable in an action on a promissory note," it nevertheless went on to say the following:

17

> [I]t would appear just that [the rule] receive consideration on the issue of reasonableness where the plaintiff's note is secured by a mortgage and foreclosure could readily have been pursued. Assuming, as has been represented by the defendants, that the mortgage security was at all times wholly adequate and that the plaintiff could have been fully satisfied in foreclosure, inquiry should be made by the trial court as to why that course was not chosen and whether it would now be equitable to burden the defendants with legal fees beyond those which would have been included in a foreclosure proceeding judgment.

*Id.* Distilled to its core, the decision to extend the rule of limiting attorney's fees to a non-foreclosure action hinges on matters of equity. Here, it is entirely equitable for Defendants to pay reasonable attorney's fees beyond any limitation imposed by Rule 4:42-9(a)(4). I agree with Plaintiff that it "was entitled to file an action on the breached promissory notes and guarantees in this Court prior to seeking to foreclose on any property and is entitled to the enforcement of its contractual rights and remedies, including negotiated and agreed-upon fee-shifting provisions." (Pl.'s Reply at 10). For example, nothing in the record leads me to believe that this action was filed for purposes of circumventing the attorney fee limitation. *See Regency Savings Bank v. Morristown Mews, LP*, 363 N.J. Super. 363, (App. Div. 2003) (applying Rule to deficiency action where uncontroverted purpose of the action was to collect all counsel fees not permitted in a foreclosure action and equating such conduct to "the proverbial entrance through the back door when entrance through the front door is impermissible"). On the contrary, this breach of contract action was commenced before the foreclosure action by more than six months. In addition, the foreclosure action did not involve the guarantees that are part of this action, the present lawsuit was expanded beyond Plaintiff's initial complaint due to challenges by the Defendants, and this action involved commercial loans.[12] *See Powerhouse First, LLC v. Waldo Jersey City, LLC*, 2016

---

[12] Defendants rely on the following proposition in *Kim v. Jung Bros., LLC*, 2020 WL 1190461 (App. Div. Mar. 12, 2020), which addressed the situation where an action on a note and a foreclosure action were both brought: "If the court determines the attorney chose [a] course of action to circumvent the fee structure of Rule 4:42-9(a)(4), or that a

18

WL 3503150, at *7 (App. Div. June 28, 2016) ("Because a commercial loan was involved, [Plaintiff] was not limited to foreclosure as its remedy for non-payment, and it was not required to foreclose on the mortgage before filing an action on the note in the Law Division. . . . The Law Division action was not filed merely as a pretext to circumvent the limits set on counsel fee awards in foreclosure cases. The action on the note was hard-fought and drawn out, primarily due to appellants' procedural mechanisms").

Even assuming Rule 4:42-9(a)(4) applies, the rule only requires that an application, supported by affidavit, be made for an award of attorney's fees over $7,500, which Plaintiff's motion satisfies, and that the total amount of attorney's fee awarded cannot be above 1% of all sums adjudged to be paid to Plaintiff. Defendants claim that "the adjudicated debt is the amount of the payoff made by Defendants on September 23rd [2021], or $146,218,245,[13] which means "Plaintiff's maximum recovery would be $1.462 million, and not the $1.732 million to which it claims entitlement." (Defs.' Suppl. Opp. at 4). Even accepting Defendants' "adjudged debt" amount of $146,218,245, Defendants incorrectly claim that Plaintiff is seeking recovery of $1.732 million in attorney's fees. Instead, $1,392,898.75 represents the attorney's fees sought while the balance represents costs. Since Rule 4:42-9(a)(4) deals only with attorney's fees and $1,392,898.75 is below Defendants' own $1.462 million limit, no issue exists. *See Kim*, 2020 WL 1190461, at *2 (stating costs are "unaffected by Rule 4:42-9(a)(4)").

---

foreclosure action will satisfy the principal and interest due on the note plus fees allowable under this rule, then fees should not be awarded in excess of the fees allowable under the rule." *Id.* at *4. Focusing on the presence of "**or**", Defendants claim that whether Plaintiff was seeking to circumvent the Rule is of no moment. I am not so moved by the same language, particularly when measured against New Jersey Supreme Court precedent. *See Bergen Builders*, 44 N.J. at 438. In any event, and as explained, Plaintiff's attorney's fee award satisfies the Rule.

[13] According to Defendants, this figure includes "the full amount of the prepayment premiums and default interest as set forth in the Judgment." (Defs.' Suppl. Opp. at 4).

### III. CONCLUSION

For the reasons set forth above, I respectfully recommend to Judge Chesler that: (1) Plaintiff's Rule 54 Motion for Costs totaling $16,483.86 be granted; and (2) Plaintiff's Fee Motion be granted but reduced to attorney's fees totaling $1,258,836.50 and costs/expenses totaling $318,083.67.

Dated: January 26, 2022

Respectfully submitted,

/s/ *Walter F. Timpone*
Walter F. Timpone Esq.

**CALCAGNI & KANEFSKY LLP**
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, New Jersey 07102
Tel: (862) 397-1796
Fax: (862) 902-5458
WTimpone@ck-litigation.com